# John Addleman *against* Benjamin Way.

Actual possession necessary to maintain trespass *quare clausum fregit.*
Where a survey has been made on a warrant generally descriptive, and a re-survey is made thereof by order of the Board of Property, whereby part of the old survey is omitted, and new lands added, part whereof has been surveyed under intervening rights, the title cannot prevail as to such omissions, or additions injurious to other persons.

TRESPASS *quare clausum fregit*, in cutting down trees. Pleas, *non cul.* and *liberum tenementum.*

The plaintiff claimed under an application of Thomas Morris, dated 22d October 1766, for 300 acres, joining on the west by a survey on a large run, which leads into the east branch of Little Juniata, about one mile eastward from the path that

leads from Little Juniata to Susquehannah, in Cumberland county.    It was marked No. 1629.

An original draft of a survey made hereon was shewn in evidence, said to contain 350 acres.    It was indorsed in the hand writing of Richard Tea (D. S.) "Thomas Morris 350 acres." On the inside it was marked thus :

"Enoch Davis, No. 1638,    1766.
Thomas Morris,    1929."

Morris on the 20th April 1767, conveyed to David Kennedy in consideration of 5s.    On the 4th June 1795, David Kennedy and Michael Cryder appeared amicably before the Board of Property, and stated, that an interference had taken place in their surveys on Warrior Mark Run, and that Kennedy's survey in particular interfered with the lands of the London Company : whereupon it was ordered, that a re-survey should be made by the deputy surveyor, pointing out all interferences, and excluding from Kennedy's draft, that part of the land claimed by the said company.    On the 21st May 1796, a re-survey was made by John Canan, (D. S.) excluding the lands previously surveyed for the London Company, including    acres additional, and omitting    acres part of the original survey.    Kennedy having sold to Cryder, the interferences between them were not marked. This re-survey, containing 270 acres 61 perches, was returned into the surveyor general's office 31st May 1796.    Kennedy conveyed to Cryder, who obtained a patent for the re-survey, and afterwards sold to the plaintiff.

The defendant claimed under a warrant to Walter Hood for 300 acres, on a creek running into the Warrior Mark Run, in or about one mile from the mouth of the said branch, and two miles from the Warrior Mark, where the branch empties into the said run, specially identifying the lands in question, dated *the 18th September 1784.    A survey of 292 acres and 144 perches was made hereupon by John Canan, (D. S.) on the 20th May 1785, when the survey of 1766, made for Morris, was not known.

It was questioned, whether the plaintiff's warrant did not describe lands on Half Moon run, and witnesses were called on both sides upon that point ; but it did not appear that the plaintiff had any possession of that part of the tract whereon the supposed trespass was committed.

The court interrupted Mr. C. Smith who had begun to address the jury on the part of the defendant.    They said there could be no possible difficulty in the present form of action.    Possession was essentially necessary to maintain trespass ; and this not being shewn to have been in the plaintiff, he could not recover.    At the same time to prevent further litigation, the court would give their sentiments on the title.

Morris's warrant was not shifted from its true place.    It is true it was not peculiarly descriptive and special, but it would

suit the present tract as well as other lands.    Its generality was reduced to a certainty, by the survey said to have been made in 1766.    The deputy omitting to return the survey into the office of the surveyor general, did not prejudice the plaintiff's right.    That principle only applies where the locality of the warrant or order is changed.

It may be objected, that the survey in 1766, was really made for Enoch Davis, on another warrant.    This is mere suspicion. We know nothing of a warrant in the name of Davis.    Besides, this may be reasonably accounted for, supposing such a warrant to have existed.    The deputy surveyor having made the survey, may have afterwards applied it to the eldest warrant.    The survey thus made by the agent of the deputy is discovered to interfere with elder warrants and surveys, and consequently must give way to them.    On the 21st May 1796, Canan makes a re-survey by order of the Board of Property, omitting parts of the old survey made for Morris, and adding other lands not included therein.    So far as this omission goes, and so far as lands have been comprehended which were before surveyed for Hood, in May 1785, or for any other person under an intervening right, the plaintiff's title must fail.    But as to such parts of the land as were comprehended in the old survey, and were not dropped or abandoned by the re-survey, and as to such additions as were not theretofore surveyed under other rights, the title of the plaintiff ought so far to prevail, on every sound and legal principle.

The plaintiff immediately suffered a nonsuit.

Mr. Duncan, *pro quer.*